UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.          )       21-CR-10250-NMG<br>)<br>(2) MOHAMMED DIAB; and  )<br>(3) AMY ROUNTREE,      )<br>)<br>Defendants.    ) | |

OPPOSITION OF THE UNITED STATES TO
DEFENDANT MOHAMMED DIAB'S MOTION TO RECONSIDER

Citing two recent out-of-Circuit decisions, defendant Mohammed Diab asks the Court to reconsider its order adopting Judge Levenson's well-reasoned Report and Recommendation and denying Diab's motion to dismiss the Superseding Indictment. ("Motion", Dkt. 197 & 198). Diab suggests that the misrepresentations he, his co-defendant Amy Rountree, and their employer Allied Wallet told to issuing and acquiring banks—misrepresentations to obtain money through transactions involving high-risk merchants—simply deprived the banks of accurate information, a deprivation he contends cannot support federal fraud charges. Motion at 5 (citing *Ciminelli v. United States*, 598 U.S. 306, 315 (2023)). This Court, however, has already recognized that the defendants lied to the banks to obtain money from them—lies that went to the very nature of the bargain between the banks and the merchants engaged in the settlement and clearing of payment card transactions. Because of those lies, the banks did not get the borrowers that they expected for the price they were paid, and as a result were exposed to potential financial losses. That is fraud, even after *Ciminelli* and the two decisions Diab cites. For this reason, Diab has not demonstrated what he must on a motion to reconsider: "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or

(3) a clear error of law in the first order". See Davis v. Lehane, 89 F. S. Supp.2d 142, 147 (D. Mass. 2000). The Court should accordingly deny his Motion.

Diab first compares himself to the slick salespeople in *United States v. Milheiser*, 98 F.4th 935 (9th Cir. 2024). The *Milheiser* defendants told lies to put themselves before customers with authority to purchase printer toner, falsely suggested that they were the customers' regular toner supplier, and offered to waive a forthcoming price increase if the customer re-upped their toner order then and there. 98 F.4th at 938-39. But the toner the defendants sold through these lies was of undisputed quality and—because there was no actual price increase—they sold it at the prevailing market price. *Id.* The Ninth Circuit vacated the defendants' fraud convictions, finding that the defendants' lies did not go to the nature of the bargain: money in exchange for quality toner at the market rate. *Id*. at 944 ("[t]he nature of the bargain requirement properly excludes from liability cases in which a defendant's misrepresentations about collateral matters may have led to the transaction but the buyer still got the product that she expected at the price she expected"); see also *United States v. Regent Office Supply*, 421 F.2d 1174, 1179 (2d Cir. 1970) (solicitation of a purchase "by means of false representations not directed to the quality, adequacy or price of goods to be sold" does not constitute a "scheme to defraud" prohibited by 18 U.S.C. § 1341). In other words, the purported victims received the same toner at the same price they would otherwise have paid, even if the defendants had not lied.

Diab and Rountree were <u>not</u> selling quality toner or some other commodity at a market price. And their lies were not about "collateral matters". Instead, Diab and Rountree concealed from banks the nature of the businesses that the banks were fronting money to, and thereby also concealed the significant financial risks—including fees, fines, and chargebacks—that followed from lending to Allied Wallets' merchant clients. That is why, as this Court found in its opinion

2

denying Diab's motion to dismiss (Docket No. 197), the banks to whom the defendants lied did not receive the benefit of their bargain. "Even if [the banks] received transaction fees, they did not and could not appreciate the financial risks associated with those fees." *Id.* at 4.

Nothing could be more central to a bank's assessment of financial risk than the identity of the party to whom it is extending credit. In *United States v. Watkins*, 42 F.4th 1278, 1286-87 (11th Cir. 2022)—a decision cited in *Milheiser*—a bank executive used a straw borrower to obtain additional loans that the bank, by rule, would not have extended had it known it was in fact lending to its own employee. The Eleventh Circuit rejected as "plainly nonsensical" the argument that a bank "has no interest in truly knowing who it is lending money to or what purposes they intend to put the money towards." To the contrary, "[b]anks have a clear interest in knowing to whom they are loaning money and for what purpose. Indeed, such information goes to the very nature of the 'bargain' itself, as banks are not willing to provide loans to anyone and everyone, or for every purpose." *Id.* at 1286-87.

In *United States v. Tarallo*, also cited in *Milheiser*, the Ninth Circuit similarly rejected the "idea that only *direct* misrepresentations of price, quality or advantages of the transaction are material." 380 F.3d 1174, 1183 (9th Cir. 2004) (emphasis in original). The defendant in *Tarallo* committed fraud by soliciting investments through the suggestion that his firm had offices in both San Francisco and Washington, D.C., when it in fact had no D.C. office. *Id.* at 1182*; see also Milheiser*, 98 F.4th at 944 ("Because investments are by nature speculative, whether the investment advisor has a large and successful operation will inform the nature of the bargain—it is relevant information about the value of the investor's purchase"). Diab and Rountree's lies about the risk that a merchant posed similarly informed the nature of the bargain between the merchants and the processing banks.

Diab's Motion recycles his argument—one that Judge Levenson in his Report and Recommendation and this Court have rejected—that the banks were paid their transaction fees and did not lose money as a result of the defendants' lies. But a scheme to defraud requires "neither a showing of ultimate financial loss nor a showing of intent to cause financial loss." *United States v. v. Shaw*, 580 U.S. 63 (2016). It requires only that defendants obtain money or property from victims through false statements that go to the essence of a transaction.

In *United States v. Dean*, No. 22-cr-20290, 2024 WL 2815278, at *14 (S.D. Fla. Jun. 3, 2024)—a case also decided in the weeks since the Court's denial of the motion to dismiss—a defendant borrower obtained pandemic relief from a lender through false representations about his companies' financial condition. He claimed his deceptions did not target a traditional property interest within the meaning of *Ciminelli*, and therefore did not defraud the bank, because the bank lender received what it had bargained for: "a loan, guaranteed by the government, on which [the bank] had no financial exposure." The Court rejected the defendant's argument that the bank's guaranteed profit on the loan negated his intent to harm the banks:

> [T]he term "harm" does not necessarily refer to a long-term financial loss on the part of the victim. Instead, a "harm" occurs when the misrepresentation affects the victim's understanding of the nature or value of the bargain. If a defendant intends to make such a misrepresentation, it does not matter whether he intends to make up for any loss later.

*Dean*, 2024 WL 2815278 at *17 (quoting *United States v. Kachkar*, No. 19-12685, 2022 WL 2705358, *1 (11th Cir. July 12, 2022)). *Dean* thus held that the borrower-defendant's lie as to his businesses' eligibility for loans affected the banks understanding of the nature of the bargain, even where the victim bank "stood to gain financially by making the loans." *Id.*

Diab's second case, *United States v. Constantinescu*, No. 4:22-CR-00612, 2024 WL 1221579 (S.D. Tex. Mar. 20, 2024), is similarly inapposite to the charges in the Superseding Indictment. The defendants in that case used social media to "pump"—or falsely promote—

4

stocks they held in an attempt to drive up the stocks' share prices, and then promptly "dump" their shares for a profit. Some of the victims who bought and sold the stocks on the open market lost money when the defendants dumped their shares and drove the prices down. Charged with securities fraud, the defendants claimed the indictment accused them only of depriving the victims of valuable economic information—something *Ciminelli* held is not a traditional property interest protected by federal fraud statutes. The court agreed and dismissed the indictment, but only after noting that unlike in a traditional fraud, "in which the victim directly surrenders their property to the defendant (or an entity in the defendant's control), the investors [in *Constantinescu*] surrendered their property to the stock market at market prices, and in return received the benefit of the bargain in the form of securities." *Id.* [1]

Unlike the victims in *Constantinescu*, the banks in Diab and Rountree's case surrendered deposited money directly to the deceiving parties, Allied Wallet and its disguised merchant clients. The Superseding Indictment thus charges both deceit *and* deprivation of money or property from the victim and satisfies *Ciminelli*'s requirements.

At bottom, Diab's Motion confuses *Ciminelli*'s holding—that the right to accurate information necessary to make discretionary economic decisions is not a traditional property right protected by the federal fraud statutes—for a holding that prohibits charging lies that secure money or property from a victim. *See United States v. An*, No. 22-cr-460 (KAM), 2024 WL 2010017 (E.D.N.Y. May 7, 2024) ("*Ciminelli* did not reject the premise that depriving a victim of information in order to induce the victim to part with traditional property can be fraud. *Ciminelli* simply rejected the notion that *information itself can be property*") (emphasis in original); *see also United States v. Chang*, No. 18-CR-00681 (NGG), 2024 WL 2817494 (E.D.N.Y. May 31,

---

[1] The government has appealed the decision to the Fifth Circuit Court of Appeals.

2024) (same).

All frauds involve depriving a victim of necessary information. Diab and Rountree's conspiracy deprived banks of information that went to the essence of their payment processing bargain <u>and</u> obtained a traditional form of property from those banks—money. The Superseding Indictment accordingly properly charges bank and wire fraud conspiracy. The Court should deny Diab's motion to reconsider.

|  |  |
|---|---|
| JOSHUA S. LEVY<br>Acting United States Attorney<br>District of Massachusetts | GLENN S. LEON<br>Chief, Fraud Section<br>Criminal Division, U.S. Department of Justice |

By: <u>/s/Seth B. Kosto</u>
    SETH B. KOSTO
    Assistant United States Attorney

By: <u>/s/Randall Warden</u>
    RANDALL WARDEN
    Trial Attorney

    MARGARET A. MOESER
    Acting Chief, Money Laundering & Asset Recovery Section
    Criminal Division
    U.S. Department of Justice

By: <u>/s/Elizabeth Carr</u>
    Elizabeth Carr
    Trial Attorney

June 7, 2024

<u>CERTIFICATE OF SERVICE</u>

I certify that this document was filed on the date listed below through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

                                            <u>/s/ Seth B. Kosto</u>
                                            SETH B. KOSTO
                                            Assistant United States Attorney

Dated:  June 7, 2024